IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| SHAWN MICHAEL BALL,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>TRACEY SUMMIT and LT. BAILEY,<br><br>　　　　Defendants. | CV 24–97–BLG–DWM<br><br><br>OPINION<br>and ORDER |

Plaintiff Shawn Michael Ball has filed a civil rights complaint under 42 U.S.C. § 1983, alleging the Yellowstone County Detention Facility violated his First Amendment right to religious exercise by failing to provide proper kosher meals. (*See* Docs. 8, 9.) Ball has filed a motion for summary judgment, (Doc. 44), to which both defendants have responded, (Docs. 47–48 (Lt. Bailey), 54–58 (Tracey Summit)). Defendant Summit[1] and Defendant Bailey (collectively "Defendants") also seek summary judgment. (*See* Docs. 47, 54, 64). For the reasons stated below, summary judgment is granted in favor of Defendants.

**BACKGROUND**

---

[1] Recognizing that this is not the defendant's legal name, it is used throughout to avoid confusion.

1

The following facts are undisputed unless otherwise noted, (*see* Docs. 42, 48, 57), and viewed in the light most favorable to the nonmovant, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).

In April 2024, Ball requested a kosher diet at the Yellowstone County Detention Center on religious grounds. (*See* Doc. 48-2 at 2.) That request was approved by Defendant Bailey on June 20, 2024. (*Id.*) Ball's religious beliefs preclude him from consuming pork or food contaminated by pork, including pots and pans that have been used to prepare pork products.

While Defendant Baily provided Ball with the diet request form referenced above, Defendant Baily does not prepare or oversee meals at the Detention Facility, nor is he involved in meal planning or menu setting. (*See* Doc. 48 at ¶¶ 6–7, 10.) Defendant Summit, on the other hand, is the Food Service Director for Summit Correctional Services and oversees the kitchen at the Detention Center. (Doc. 57 at ¶¶ 1–2, 10.) Religious diets at the facility are provided pursuant to YCDF Policy 7-1. (*Id.* ¶ 3.) Defendant Summit was not involved in the setting of that policy. (*Id.*) Pursuant to YCDF Policy 7-1, inmate requests for a religious diet are made to the facility administration. (*Id.* ¶ 4.) If a request is approved, Defendant Summit is notified. (*Id.*) Defendant Summit was notified of Ball's approval for a kosher diet and, since that notification, has provided him with a kosher diet. (*Id.* ¶¶ 5–6, 13–14.) Meal plans and menus, including kosher meals,

2

are prepared by a registered dietician, approved by the facility's administration, and implemented by Defendant Summit. (*Id.* ¶¶ 7, 10.) While all meals at the Detention Center are prepared in the same kitchen, pots, pans, and utensils for kosher meals are stored and used separately from those used for mainline food. (*Id.* ¶ 11.) All dishes are also washed separately, and kosher meals are served on disposal Styrofoam trays. (*Id.*) There is no requirement in YCDF Policy 7-1 for religious menus to be approved and/or implemented by an outside religious organization. (*Id.* ¶ 9.)

## ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it impacts the outcome of the case in accordance with governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014). Nonetheless, the nonmoving party must identify, with some reasonable particularity, the evidence that it believes precludes summary judgment. *See Soto v. Sweetman*, 882 F.3d 865, 870 (9th Cir. 2018) (explaining that while pro se

3

parties are exempted from "*strict* compliance with the summary judgment rules," they are "not exempt[ed] . . . from *all* compliance," such as the requirement to identify or submit competent evidence in support of their claims).[2]

Here, Ball insists he is entitled to summary judgment on the ground that the Detention Center violated his kosher diet by: (1) using pots, pans, and utensils for both kosher and non-kosher foods, (2) serving him two breakfast meals in February 2025 that contained non-kosher white bread, and (3) failing to have an outside Jewish group oversee the menu or provide training for meal preparation for kosher foods at the Detention Center. (*See* Docs. 8, 42.) Ball also claims that he should be provided with frozen, TV-style pre-packaged kosher meals. (*Id.*) On the other hand, Defendants assert that they are entitled to summary judgment on the grounds that Defendant Bailey plays no role in the provision of food or food policy at the facility and the facility adequately met Ball's religious dietary needs. Because Defendants are correct on both points, summary judgment is granted in their favor.

I.     **Defendant Bailey**

Section 1983 confers a tort remedy upon individuals "whose constitutional rights have been violated by state officials acting 'under color of' law." *Whalen v. McMullen*, 907 F.3d 1139, 1145 (9th Cir. 2018) (quoting 42 U.S.C. § 1983).

---

[2] Defendants' motions were accompanied by the requisite *Rand* Notices, (*see* Docs. 58, 65), and Sparkman responded, (*see* Docs. 66, 67).

Consistently, to prove a claim under § 1983, a plaintiff must show "two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (internal quotation marks omitted). There is no vicarious liability in § 1983 lawsuits. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Accordingly, a government official may not be held liable under § 1983 unless the official's own actions caused the alleged constitutional deprivation. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012). Consistently, a plaintiff must specifically identify which individual actors were involved in the deprivation of his rights and the specific actions that were taken. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which the plaintiff complains." (Internal quotation marks and alteration omitted)).

Here, the undisputed record shows that Defendant Bailey's only actions were to provide Ball with the "Inmate Special Diet" form, approve that form, and provide it to Defendant Summit. (Doc. 48 at ¶¶ 6–10; Doc. 48-2 at 2.) Defendant Bailey was not involved in the preparation of food at the facility, nor did he

5

oversee the kitchen in any way. (Doc. 48 at ¶¶ 6–8.) Accordingly, Ball fails to show that Defendant Baily acted, or failed to act, in such a way as to cause a deprivation of his constitutional rights. Summary judgment is granted in favor of Defendant Bailey.

## II.  Defendant Summit

"Inmates clearly retain protections afforded by the First Amendment . . . including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Nevertheless, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the consideration underlying our penal system." *Id.* To implicate the Free Exercise Clause, a prisoner must show that the belief at issue is both "sincerely held" and "rooted in religious belief." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (internal quotation marks omitted); *see Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008) (noting that the "sincerity test," not the "centrality test," applies to a free exercise analysis). After the inmate makes this initial showing, he must then demonstrate that prison officials substantially burdened the practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *Shakur*, 514 F.3d at 884–85. "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it

6

must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013) (internal quotation marks omitted). A regulation that substantially burdens a prisoner's right to freely exercise his religion will be upheld only if it is "reasonably related to legitimate penological interests." *Shakur*, 514 F.3d at 884–85 (citing *Turner v. Safley*, 482 U.S. 78, 89–90 (1987)).

With respect to religious diets, prisoners "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987). There is no dispute that the religious practice at issue here—the provision of an adequate kosher diet—concerns a sincerely held religious belief and that Ball's claim is rooted in such a belief. *Malik*, 16 F.3d at 333. Thus, the dispositive question is whether Ball can demonstrate Defendant Summit substantially burdened that belief. *See Shakur*, 514 F.3d at 884. Because he cannot, summary judgment is granted in favor of Defendant Summit.

Ball alleges that the kosher diet he has received substantially burdens his belief because the Detention Center (1) uses pots, pans, and utensils for both kosher and non-kosher foods, (2) served him two breakfast meals in February 2025 that contained non-kosher white bread, and (3) failed to have an outside Jewish

7

group oversee the menu or provide training for meal preparation for kosher foods at the Detention Center. As to the provision of "clean" or kosher food preparation tools, the undisputed facts show that the Detention Center uses separate kosher utensils, pots, and pans and that those items are stored and cleaned separately from non-kosher items. (*See* Doc. 7 at ¶¶ 11–12.) And while Defendant Summit does not dispute that Ball may have been served two non-kosher meals in February 2025, "an isolated or sporadic interference does not substantially burden the free exercise of religion." *Hendrix v. Barfield*, 2020 WL 1043442, at *5 (D. Nev. Mar. 4, 2020) (collecting cases). Finally, as argued by Defendant Summit, there is no constitutional right to have an outside organization or religious individual sanction the meals provided at the facility. While such a fact could be relevant to show specific practices do not meet the specifications of a religious diet, no such evidence has been presented here. To the contrary, the record shows that the Detention Center has a registered dietician to ensure that the menus offered are both nutritionally adequate and kosher compliant. (*See* Doc. 57 at ¶ 7.) The constitution does not mandate specific training for facility staff or that Ball be provided with pre-packaged kosher meals. Indeed, Defendant Summit has shown that the Detention Center offers an adequate kosher diet, (*see* Doc. 63 at 2 (menu)), and takes steps to avoid cross-contamination, (*see* Doc. 57 at ¶¶ 11–12). Ball has therefore failed to show that he was subject to a substantial burden, and summary

judgment is granted in favor of Defendant Summit.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that:

1. Ball's motion for summary judgment (Doc. 44) is DENIED.

2. Defendants' motions for summary judgment (Docs. 47, 54) are GRANTED.

3. The Clerk is directed to enter judgment in favor of Defendants and close the case file.

DATED this 30th day of December, 2025.

Donald W. Molloy, District Judge
United States District Court